UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

RHODERICK LEWIS,

     Petitioner,

v.                                                    Case No. 3:18cv1563-LC-HTC

MARK S. INCH,[1]

     Respondent.

_____/

ORDER and
REPORT AND RECOMMENDATION

     This matter is before the Court on Rhoderick Lewis's *pro se* amended petition
for writ of habeas corpus under 28 U.S.C. § 2254.  ECF Doc. 5.  The matter was
referred to the undersigned Magistrate Judge for report and recommendation
pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After considering the
amended petition, the State's response (ECF Doc. 14), and Lewis's reply (ECF Doc.
18), the undersigned recommends the Petition be DENIED without an evidentiary
hearing.

## I.  BACKGROUND

     Lewis is an inmate of the Florida Department of Corrections, currently
incarcerated at Blackwater River Correctional Facility.  In his amended petition,

---

[1] Mark S. Inch succeeded Julie Jones as Secretary of the Florida Department of Corrections and is
automatically substituted as the respondent.  *See* Fed. R. Civ. P. 25(d).

Lewis challenges two convictions from November 2012, in Escambia County, Florida, in which he pled *nolo contendere* without a plea deal with the State. He asserts three grounds for relief, all premised on the central argument that the circuit court erred in 2016 by retroactively finding him competent to enter those pleas. Doc 5. For the reasons given below, the undersigned finds that Lewis is not entitled to relief.

### A.    The Offense Conduct

According to the arrest report, on May 4, 2008, Lewis punched and repeatedly kicked a stranger in the head, stole his car, entered into a high-speed chase with officers, drove the car aggressively at an officer at one point, and left the scene after crashing into and damaging vehicles and other property—all without a valid driver's license. ECF Doc. 14-1 at 60. He was arrested and charged in case 2008-CF-2243 in Escambia County Circuit Court with carjacking without a weapon, aggravated assault on a law enforcement officer, fleeing or eluding law enforcement with sirens and lights activated, leaving the scene of a crash involving property damage, and driving while license canceled or suspended. ECF Doc. 14-1 at 53.

When law enforcement investigators obtained his DNA profile and entered it into a database, it returned a hit on a previous case involving several car burglaries where the perpetrator had left some blood. ECF Doc. 14-1 at 131. Lewis was

subsequently charged with three counts of burglary of an unoccupied conveyance, two criminal mischief counts and a petit theft count, in case number 2008-CF-2242. *Id.* at 115.

> ## B. Initial Declaration of Incompetence to Proceed and July 2, 2009 Straight-Up *Nolo Contendere* Plea

Early in the case, the defense filed a Notice of Incompetency, ECF Doc. 14-1 at 74, supported with a Psychological Evaluation for Insanity prepared by psychologist Dr. James Larson, Ph.D. *Id.* at 76-80. In the evaluation, Dr. Larson opined that Lewis was not competent to proceed. *Id.* at 79. On October 20, 2008, the circuit court declared Lewis incompetent to proceed and committed him to the custody of the Department of Children and Families. ECF Doc. 14-1 at 81-86; *Lewis v. State*, 190 So. 3d 208, 209 (Fla. 1st DCA 2016).

On February 12, 2009, psychologists Dr. Kimberly McCollum, Psy.D., and Dr. Joseph D'Agostino, Ph.D., at Florida State Hospital issued a report finding that Lewis had regained competency, which was submitted to the circuit court. ECF Doc. 14-1 at 86-97. The circuit court held a competency hearing on March 25, 2009, but, at the hearing, the circuit court did not hear testimony or argument regarding Lewis's competency. Instead, the parties simply stipulated to Lewis's competency,

and the circuit set the matter for change of plea hearing.  *Id.* at 98-101; *Lewis*, 190 So. 3d at 209.

On July 2, 2009, Lewis pled *nolo contendere*, ECF Doc. 14-1 at 103-114.  On August 26, 2009, at sentencing, Lewis attempted to withdraw his guilty plea and argued he was not aware he faced the prison releasee reoffender classification.[2]  *Id.* at 126.  The circuit court denied the motion.  *Id.* at 126-28.  The court sentenced Lewis to thirty (30) years' imprisonment.  *Id.* at 140.  Lewis appealed the judgment and sentence to the First District Court of Appeal ("First DCA") (case number 1D09-4738).  The First DCA affirmed *per curiam* without written opinion on June 8, 2010.  *Lewis v. State*, 37 So. 3d 853 (Fla. 1st DCA 2010).

### C. Successful 3.850 Motion for Postconviction Relief and the November 27, 2012 Straight-Up *Nolo Contendere* Plea

On February 29, 2012, Lewis filed a motion for postconviction relief under Fla. R. Crim. P. 3.850 in which he raised the issue of the lack of a hearing to determine his competency to enter the July 2, 2009 plea.  ECF Doc. 14-2 at 2-20.  On May 18, 2012, the circuit court granted the 3.850 motion and vacated the judgment and sentence, finding that the circuit court erred in accepting the

---

[2] On June 30, 2009, the State filed a notice of Lewis's qualification as a prison releasee reoffender. ECF Doc. 14-1 at 102.

stipulation of competency without reviewing the reports and holding a hearing.  ECF Doc. 14-2 at 17.

Subsequently, on September 10, 2012, the circuit court appointed Dr. Lawrence Gilgun to examine Lewis, ECF Doc. 14-2 at 24.  Dr. Gilgun issued an evaluation report dated September 17, 2012.  *Id.* at 28-31.  In the report, Dr. Gilgun opined that Lewis was competent to proceed.  *Id.* at 30.  However, the record does not contain any indication that a competency hearing was held or that the circuit court adjudicated Lewis competent to stand trial.  Nonetheless, on November 27, 2012, Lewis again pled *nolo contendere*.  The trial court accepted the plea, and the judge imposed the same sentence.  *Lewis*, 190 So. 3d at 209.

### D. The Belated Appeal Reversing and Remanding for Full Consideration of Lewis's Competency on November 27, 2012

Lewis was granted a belated appeal of the new judgment and sentence by the First DCA on July 28, 2014.  ECF Doc. 14-2 at 153.  The First DCA reversed and remanded (case number 1D14–4006).  The First DCA found that "[a]lthough the trial court had ordered a competency evaluation of Appellant several months before the second plea and sentencing hearing, the record does not reflect that the court held a competency hearing, reviewed the expert evaluation, or entered a written order determining Appellant's competency prior to the resentencing hearing."  *Id.* at 156.

Thus, on April 27, 2016, the First DCA reversed and remanded the case with the following instructions:

> On remand, the trial court must hold a hearing to determine Appellant's competency to proceed. If evidence existing at the time of the plea supports a finding that Appellant was competent in November 2012 when he entered his second plea and was resentenced, then the trial court may make a retroactive determination of competency with no change to Appellant's judgment and sentence. *See Dougherty,* 149 So.3d at 679. If the trial court cannot make this determination, it must conduct a proper determination of Appellant's competency and, if the court finds Appellant competent, the case must proceed to trial or a new plea. *See id.; Brooks v. State,* 180 So.3d 1094 (Fla. 1st DCA 2015); *Cotton v. State,* 177 So.3d 666 (Fla. 1st DCA 2015); *Reynolds v. State,* 177 So.3d 296 (Fla. 1st DCA 2015).

*Lewis*, 190 So. 3d at 209; ECF Doc 14-2 at 157.

On remand, the circuit court held a hearing, and Dr. Gilgun testified as to Lewis's competency at the time of the plea in 2012. *Id.* at 161-208. At the hearing, the circuit court stated it had reviewed the other expert reports, the audio recording of telephone calls made by Lewis, and the videotaped court appearances of Lewis at his plea and other proceedings in 2012. *Id.* Thus, as discussed more fully below, the circuit court found Lewis had been competent to proceed with his plea on November 27, 2012. ECF Doc. 14-2 at 206. On November 4, 2016, the court entered a written order finding, based on the evidence that existed at the time of the 2012 plea, that Lewis "is competent to stand trial and enter a plea and that these

findings date back to November 2012." *See Nunc Pro Tunc Order Finding Defendant Competent,* ECF Doc. 14-2 at 219-20.  Thus, pursuant to the First DCA's remand order, the judgment and sentence imposed on November 27, 2012 remained intact. *See Lewis*, 190 So. 3d at 209; ECF Doc 14-2 at 155.

### E.    Postconviction History and Timeliness

Lewis appealed the order, and the First DCA affirmed *per curiam* without written opinion on June 21, 2017 (cases 1D16-5514 and 1D16-5516). *Lewis v. State*, 227 So. 3d 571 (Fla. 1st DCA 2017).  The First DCA denied Lewis's motion for written opinion on July 26, 2017.  Lewis filed the federal petition on July 16, 2018.

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a petition for habeas relief must be filed within one-year limitations of certain "trigger" dates.  28 U.S.C. § 2244(d)(1).  For purposes of Lewis's petition, the applicable trigger date is "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).  Additionally, the limitations period is tolled for the time during which a "properly filed" postconviction motion is pending in state court. *Id.* § 2244(d)(2).

After Lewis's plea, conviction, and sentencing on November 27, 2012, his case was on direct appeal until July 26, 2017, when the First DCA denied his motion

for written opinion.[3]  The judgment became final, for purposes of § 2244(d)(1), upon

expiration of the 90-day period in which Lewis could have sought direct review of

his conviction in the United States Supreme Court, or on Tuesday, October 24, 2017.

*See Chavers v. Sec'y, Fla. Dep't of Corr.*, 468 F.3d 1273, 1275 (11th Cir. 2006).

Since the federal petition was filed within a year of that date (on July 16, 2018) the

undersigned agrees with the Respondent that the petition was timely filed.  *See*  ECF

Doc. 14 at 8-9.

## II.   DISCUSSION

Lewis raises the following three (3) grounds of relief:  (1) under the

Fourteenth Amendment, a trial court cannot determine competency retroactively; (2)

the trial court erred in finding Lewis competent by failing to follow Florida law

---

[3] The undersigned uses the date the motion for written opinion was denied as the date the 90-day period runs because "[u]der the Supreme Court's rules, the 90-day period for filing a petition for certiorari begins to run from the date of entry of the judgment; and ***in the event a timely petition for rehearing is filed and denied, the period begins to run from the date of the denial.*** Sup. Ct. R. 13.3." *Lowe v. Fla. Dep't of Corr.*, 679 F. App'x 756, 757–58 (11th Cir. 2017) (emphasis added) (citing U.S. Supreme Court Rule 13.3 ("if a petition for rehearing is timely filed in the lower court by any party, or if the lower court appropriately entertains an untimely petition for rehearing or sua sponte considers rehearing, the time to file the petition for a writ of certiorari for all parties (whether or not they requested rehearing or joined in the petition for rehearing) runs from the date of the denial of rehearing or, if rehearing is granted, the subsequent entry of judgment."). The undersigned treats the motion for written opinion as equivalent to a motion for rehearing, but the Secretary, who finds the finality date to be September 19, 2017, appears not to do so.  This is a distinction that does not make a difference, however, since the petition is timely by several months under either approach.

requiring two experts to examine him before reversing a finding of incompetence; and (3) even if a trial court could find him competent, retroactively, based on the evidence available, the trial court erred in finding him competent to enter his plea on November 27, 2012.

Under the standard of review for a § 2254 motion, this Court should not grant habeas relief unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

The United States Supreme Court set forth the framework for a § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Under the *Williams* framework, a federal court must first determine the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  *See Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).  The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue.  *See Thaler v. Haynes*, 559 U.S. 43, 47 (2010).

Once the governing legal principle is identified, the federal court must determine whether the state court's adjudication is "contrary to" the identified

governing legal principle or the state court "unreasonably applie[d] that principle to the facts of the . . . case." *See Williams*, 529 U.S. at 412-13 (O'Connor, J., concurring). Even if a federal court concludes the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *See Maharaj v. Sec'y Dep't of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005).

Additionally, because the First DCA affirmed the judgment without written opinion, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principle to the contrary." *Harrington v. Richter*, 562 U.S. 86, 99 (2011). Thus, "the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Id.* at 98. The undersigned finds that Lewis has failed to meet this burden as to all three grounds of relief.

### A.  Ground One: A Retroactive Determination of Competency *Per Se* Violates the Fourteenth Amendment Due Process Clause

Lewis argues that a "retroactive evaluation that has been determined mainly by judicial finding on past events to reconstruct events around the plea, but not anything to do with the state of mind of the Petitioner," is a *per se* violation of his Fourteenth Amendment due process rights. In support, Lewis relies upon *Drope v.*

*Missouri*, 420 U.S. 162 (1975).  The undersigned finds the facts in *Drope* to be distinguishable from the facts of this case and, further, that Lewis's position is unsupported by Eleventh Circuit case law.

Specifically, in *Drope*, defense counsel moved for a continuance of the trial so that a psychiatric examination of the defendant could be done.  The trial court denied the motion, no contemporaneous examination was done, and the case proceeded to trial.  After the first day of trial, defense counsel moved for a mistrial because the defendant had attempted suicide that day.  The trial court denied the motion for mistrial and proceeded with the remainder of the trial without the defendant present.  He was found guilty and sentenced to life imprisonment.

Drope filed a motion for postconviction relief arguing that the trial court erred in not ordering a competency evaluation before proceeding to trial or at least when defendant attempted suicide.  The issue reached the United States Supreme Court, which held that the trial court had erred in proceeding without any competency evaluation.  Although the Supreme Court in *Drope* recognized "the inherent difficulties of such a *nunc pro tunc* determination under the most favorable circumstances," it did not find that such a determination is never appropriate. *Drope*, 420 U.S. at 183.  Instead, the Court stated "we cannot conclude that such a procedure

would be adequate here," where no psychological examination was performed at the time of trial or in the intervening six (6) years.

Although Lewis latches on to *Drope*, his case is distinguishable in one crucial way - a thorough psychological evaluation, which specifically included the issue of Lewis' competence to proceed, was done contemporaneously to the *nolo contendere* plea. Also, video and audio evidence of his competency recorded at around the time of his plea in 2012 was available to the circuit court in 2016. Therefore, contrary to the facts in *Drope,* Lewis's due process rights were adequately protected when the First DCA remanded the case for an analysis in 2016 of the psychological evaluation conducted, and the other evidence of competence gathered and preserved, around the time of the plea in 2012.

The First DCA's decision on remand is further supported by cases from Eleventh Circuit. Indeed, since *Drope* was decided, the Eleventh Circuit has held that "[i]f the trial court fails to order a competency hearing at trial when one is warranted, the state may still attempt to prove that the defendant was in fact competent at the time of trial at a *nunc pro tunc* competency hearing, so long as a reliable inquiry into the defendant's competency can still be made; the burden is on the state." *Watts v. Singletary*, 87 F.3d 1282, 1287 (11th Cir. 1996) (citing *James v. Singletary,* 957 F.2d 1562, 1570-71 & n. 11 (11th Cir.1992), *cert. denied,* 510 U.S.

896 (1993); *Fallada v. Dugger,* 819 F.2d 1564, 1568 (11th Cir.1987); *Zapata v. Estelle,* 588 F.2d 1017, 1020 (1979)).

Indeed, according to the prior Fifth Circuit, "[t]he passage of even a considerable amount of time may not be an insurmountable obstacle if there is sufficient evidence in the record derived from knowledge contemporaneous to trial." *United States v. Makris*, 535 F.2d 899, 904–05 (5th Cir. 1976).[4]  Such evidence could include "the transcript of the trial itself", "[m]ental examinations conducted close to the trial date," and "the recollections of non-experts (including the observations of the trial judge) who had the opportunity to interact with defendant during the relevant period." *Id.* (internal citations omitted).  Such evidence "increase[s] the probability that the *nunc pro tunc* hearing will not be unduly speculative." *Id.*  Such evidence existed and were reviewed by the circuit court in Lewis's case on remand.

The Eleventh Circuit also more recently approved of a *nunc pro tunc* "reliable inquiry into the defendant's competency" in *Lawrence v. Florida Department of Corrections*, 700 F.3d 464 (11th Cir. 2012).  The *Lawrence* panel upheld a Florida

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions handed down by the former Fifth Circuit before the close of business on September 30, 1981.

court finding, in 2005, that Lawrence had been competent to plead guilty in 2002, based on evidence of his psychological state compiled around the time of his guilty plea. *Id.* at 479–80. In so holding, the court recognized that Lawrence had been evaluated for competency 17 months before the guilty plea and penalty phase and was found to be competent. The court also noted that while the evaluations were conducted more than a year before his plea, Lawrence's counsel testified that his behavior had not changed throughout their representation of Lawrence. *Lawrence* supports the First DCA's decision to remand the case.

Thus, the undersigned finds that the First DCA had a reasonable basis for concluding that the circuit court's *nunc pro tunc* determination of Lewis's competency did not violate the Fourteenth Amendment's Due Process guarantee. Therefore, Lewis is not entitled to habeas relief on this ground.

**B.    Ground Two: The Trial Court Erred in Not Requiring Two Experts to Evaluate Lewis for Competency Before Issuing a Written Order of Competency**

In this ground, Lewis alleges that, even if the trial court was allowed to make a retroactive finding of competency, "the *nunc pro tunc* order entered by the lower court was legally insufficient as a matter of law" because "Fla. Statute § 916.12 (2) requiring two mental health experts for a prior evaluation was not adhered to." ECF Doc. 5 at 7.

As the Respondent points out, Lewis did not contemporaneously object to the use of only one expert before he pled on November 27, 2012. ECF Doc. 14 at 11-13. Instead, he raised this issue for the first time in his direct appeal. Thus, for the First DCA to reverse the circuit court's decision, Lewis would have had to show that the trial court's retroactive competency determination rose to the level of "fundamental error." *Millen v. Millen*, 122 So. 3d 496, 498 (Fla. 3d DCA 2013) ("[I]n the absence of an objection below, this Court will not consider issues for the first time on appeal except in cases of fundamental error."). The Florida Supreme Court has defined "fundamental error" as "error which goes to the foundation of the case or goes to the merits of the cause of action." *Sanford v. Rubin*, 237 So. 2d 134, 137 (Fla. 1970). Fundamental error is an error which "reach[es] down into the validity of the trial itself." *Universal Ins. Co. of N.A. v. Warfel*, 82 So. 3d 47, 64 (Fla. 2012) (quoting *State v. Delva*, 575 So. 2d 643, 644-45 (Fla. 1991)).

The undersigned finds that Lewis has failed to show a fundamental error occurred. As Lewis correctly points out, Florida Statute § 916.12(2) provides, in pertinent part, that, "[a] defendant must be evaluated by no fewer than two experts before the court commits the defendant or takes other action authorized by this chapter or the Florida Rules of Criminal Procedure, except if one expert finds that the defendant is incompetent to proceed and the parties stipulate to that finding, the

court may commit the defendant or take other action authorized by this chapter or the rules without further evaluation or hearing, or the court may appoint no more than two additional experts to evaluate the defendant." Fla. Stat. § 916.12(2). However, what Lewis misses is that a circuit court's failure to comply with § 916.12(2) does not result in fundamental error. In interpreting a similar requirement in the former version of Florida Rule of Criminal Procedure 3.210(b), the Florida Supreme Court has held that, "the failure to appoint a second expert to examine the defendant's mental competency to stand trial is not fundamental error. It is procedural in nature and does not go to the foundation of the case or to the merits of the cause of action." *D'Oleo-Valdez v. State*, 531 So. 2d 1347, 1348 (Fla. 1988).

Also, Lewis's claim is one premised on the state court's failure to follow state law. Federal habeas corpus relief, however, does not lie for errors of state law. *Estelle v. McGuire*, 502 U. S. 62, 67 (1991). It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. *Id.*, 502 U. S. at 67-68. "A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." *McCullough v. Singletary,* 967 F.2d 530, 535 (11th Cir. 1992). Here, the question of whether one or two experts were required involves an interpretation of state law

rather than a federal constitutional issue, and so Lewis is not entitled to federal habeas review on this Ground.

Instead, to be cognizable on federal habeas review, Lewis's claim must allege that the competency finding went beyond merely violating Florida law; he must show that the competency finding deprived him of his Fourteenth Amendment rights to due process. He raises that claim in Ground Three, discussed next.

**C.    Ground Three: The Trial Court Erred in Making Its *Nunc Pro Tunc* Findings in 2016 That Petitioner Was Competent in 2012**

In this ground, Lewis argues that, even if a retroactive competency hearing is not a *per se* violation of the Due Process clause, it was in this case because "the evidence does not establish clear competent and substantial evidence as to the Petitioner's understanding at the time of the plea." ECF Doc. 5 at 8. Lewis's claim is thus a substantive competency claim. *See Lay v. Royal*, 860 F.3d 1307, 1314 (10th Cir. 2017), *cert. denied*, 138 S. Ct. 1553 (2018) ("a substantive competency claim is founded on the allegation that an individual was tried and convicted while, in fact, incompetent.") (quoting *McGregor v. Gibson*, 248 F.3d 946, 952 (10th Cir. 2001) (en banc)).

To be entitled to relief on this claim, Lewis must present "clear and convincing evidence" creating a "real, substantial and legitimate doubt" as to his competence to

stand trial. *James v. Singletary*, 957 F.2d 1562, 1569–70 (11th Cir.1992). To show entitlement to a postconviction evidentiary hearing on a substantive competency claim, "the standard of proof is high [and] the facts must positively, unequivocally, and clearly generate the legitimate doubt." *Card v. Singletary,* 981 F.2d 481, 484 (11th Cir.1992) (quotations omitted), *cert. denied,* 510 U.S. 839, 114 S.Ct. 121, 126 L.Ed.2d 86 (1993). A presumption of correctness attaches to a state court's finding of competence and a federal habeas court must determine that the finding is not "fairly supported by the record" before it may overturn the state court's decision. *Maggio v. Fulford,* 462 U.S. 111, 117, 103 S.Ct. 2261, 2264, 76 L.Ed.2d 794 (1983); *Card,* 981 F.2d at 484 n. 5 (citing *Demosthenes v. Baal,* 495 U.S. 731, 110 S.Ct. 2223, 109 L.Ed.2d 762 (1990)).

Far from showing a "substantial and legitimate doubt" about Lewis's competency, the record more than fairly supports the circuit court's competency determination. On remand, the circuit court held a hearing on October 4, 2016 where Lewis was represented by counsel, Jason Cromey. ECF Doc. 14-2 at 161. At the hearing, Dr. Gilgun testified that he interviewed Lewis on September 17, 2012, reviewed the prior competency evaluations in the case, and reviewed the arrest report and the records at the Escambia County Jail. *Id.* at 164. He testified in detail about the interview and analysis he conducted on Lewis and opined to the judge that Lewis

was competent to proceed in November of 2012.  *Id.* at 165-68.  Counsel for Lewis cross-examined the expert extensively and was even allowed re-cross.  *Id.* at 169.

The State also offered as evidence audio recordings of the defendant making telephone calls from the jail around the time of his plea on November 27, 2012 and a video of the hearing in which Lewis entered his guilty plea on that day.  *Id.* at 183. Defense counsel also asked the circuit court to review the earlier evaluations done in the case, and the circuit court judge continued the hearing to allow him to review the reports and all the other evidence.  *Id.* at 185.  The hearing was reconvened on November 4, 2016.  *Id.* at 189.  The circuit court judge informed the parties that he had read all of the reports, reviewed the jail calls, and had watched the video of the November 27, 2012 plea proceedings.  *Id.* at 191.

The circuit court then heard argument from both sides, and, in open court held, "Based on the totality of the evidence, I'm going to find that the defendant was competent at the time he entered his plea in November of 2012."  *Id.* at 201.  The court explained in six pages of detail his analysis of "not just Dr. Gilgun's testimony, but . . . all the evidence, which includes the jail phone calls of September 17th, 2012 and November 18th, 2012 as well as the CourtSmart video of November 27th, 2012." *Id.* at 201-06.  In the court's written findings, the court once again stated, "So from the totality of the evidence that I've been presented as I've stated before and recited

some of, I -- I find that the defendant was competent at the time of his sentencing in 2012. So, therefore, I'm not going to vacate the judgment and sentence. I'm going to leave it as is." *Id.* at 206.

Because of this extensive, competent evidence relied upon by the circuit court, Lewis has not shown the finding of competence was incorrect, much less that clear and convincing evidence "positively, unequivocally, and clearly generate[s] . . . legitimate doubt" about his competence to plead *nolo contendere* on November 27, 2012. *See Card,* 981 F.2d at 484. Therefore, he is not entitled to habeas relief on this claim.

## III.   CONCLUSION

For the reasons stated above, Lewis is not entitled to habeas relief on any of the grounds raised in the amended petition.

### A.   Evidentiary Hearing

The undersigned finds that an evidentiary hearing is not warranted. In deciding whether to grant an evidentiary hearing, this Court must consider "whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schirra v. Landorian*, 550 U.S. 465, 474 (2007). The pertinent facts are fully developed in the record or the record otherwise precludes habeas relief; therefore, the Court is able to

"adequately assess [Petitioner's] claim[s] without further factual development,"

*Turner v. Crosby*, 339 F.3d 1247, 1275 (11th Cir. 2003), *cert. denied*, 541 U.S. 1034

(2004).

### B.    Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States

District Courts provides: "[t]he district court must issue or deny a certificate of

appealability when it enters a final order adverse to the applicant."  If a certificate is

issued, "the court must state the specific issue or issues that satisfy the showing

required by 28 U.S.C. § 2253(c)(2)."  28 U.S.C. § 2254 Rule 11(a).  A timely notice

of appeal must still be filed, even if the court issues a certificate of appealability.  28

U.S.C. § 2254 Rule 11(b).

After review of the record, the undersigned finds no substantial showing of

the denial of a constitutional right.  § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473,

483-84 (2000) (explaining how to satisfy this showing) (citation

omitted).  Therefore, it is also recommended that the district court deny a certificate

of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order,

the court may direct the parties to submit arguments on whether a certificate should

issue."  Rule 11(a), Rules Governing Section 2254 Cases.  If there is an objection to

this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is ORDERED that,

1.     The clerk is directed to update the case file information to reflect Mark S. Inch as the Respondent.

It is also respectfully RECOMMENDED:

1.     That the amended petition under 28 U.S.C. § 2254, challenging the convictions in *State v. Lewis*, 2008-CF-2242 and 2008-CF-2243, in the First Judicial Circuit, in and for Escambia County, Florida, ECF Doc. 5, be DENIED without an evidentiary hearing.

2.     That a certificate of appealability be DENIED.

3.     That the clerk be directed to close the file.

At Pensacola, Florida, this 4th day of November, 2020.

/s/ Hope Thai Cannon

**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**